Taking a brief recess, Hilton v. Kirby Inland Marine, L.P. Thank you, Your Honor. May it please the Court. This case goes back to an accident that occurred at a dock in Port Arthur, Texas. My client, Mark Hilton, was employed by Intertech. Intertech would go on various barges and gauge them. And that's essentially the same as the mechanic in your service station going in and running a dipstick down and pulling out a sample or seeing how full the oil tank on the car is. And what Mr. Hilton's job was to go and take samples from product in these barges. There were a Kirby tug and two Kirby barges involved. The tug had pushed the two barges into the dock, which was owned by Tubalcaine. They then called Intertech to come out and gauge the barges after Kirby had, in fact, transferred product from one barge to the other. So you had an empty barge and a full barge. Now the accident occurred when my client and my client engaged the barge, the barge that had product in it, and he was required to go from a dock onto the barge. But there was no gangway and the lighting was poor. Now he had not yet begun to work on the barge, and this is important when you look at Sandia. Because what my client did when he went from the dock to the barge, he immediately slipped, fell down, and injured his knee. And, in fact, has not been able to work at the job he was doing since. It was a wet, misty day, is that right? Wet, misty, and dark. Was there any evidence of transmission fluid or motor oil where he stepped on the deck of the barge? Yes, Your Honor. My client said there was something on there, there was product or something similar on the barge besides the misty rain and the dark. Did he get any of it on his pants or his leg or his boot or? I think he got some on his boots, but I don't think he- Is there any evidence of that? No, we do not have that at this point. Okay. Now, if you look at Sandia, Sandia says that a long shore company, you know, they're responsible for cleaning, for protecting their people in their work area. But Mr. Hilton had not yet reached his work area. He hadn't had a chance, nor had anybody to really look and say, well, golly, we've got a problem here. And Kirby said, you know, we've got the right to provide lights. And then we also talked about the lack of gangways, and I said, well, we only provide gangways when we know the client or the sampler is coming. Which is interesting because you had a gangway going to the barge that had been emptied, but there was no gangway to the Kirby truck, tug, and there was no gangway to the empty barge. And I guess what my client would have had to have done is to go to the tug and say, hello, would you please put out a gangway? What difference would it have made in your view if there had been what you would consider adequate lighting? My client could have seen if there was something on the deck of the barge, and he was experienced enough, he should have been able to see if there was something on the deck of the barge that, in fact, was slippery. Well, but he knew that the weather was wet and misty, so there would be a certainty that the deck would be wet. I think that's a fact issue, Your Honor. And the reason I say that is that Kirby has taken the position that in fact there was a non-skid surface on the barge. You know, it's not just was the barge deck wet, it was, was there evidence, I mean, as a matter of law, was there evidence that something other than a slippery product caused my client to slip and fall? Now, that's a fact issue for the jury, and the Honorable Trial Court decided that she would make that decision just based on summary judgment evidence, and that's not what you're supposed to do. If you have, if you read the judge's opinion, you almost think you're reading an opinion of something that's occurred after a trial or after a take-nothing judgment at trial, and we haven't been there yet. Now, I took Todd Belkey's deposition, it's, of course, part of the record, and he manages Kirby's 108 tugs in the intercoastal trade along with about 800 barges, and he said that Kirby had control over the lights on the tug, which could have illuminated the barge. The captain had the right to do that. Ordering gangways, Kirby could have ordered gangways, and again, while Kirby knew that Kirby Captain knew that folk from Intertech were coming to sample this barge, he didn't do anything. He left, he didn't turn on the tug lights, and he didn't provide a gangway. Additionally, he said, you know, we had Kirby people actually did the transferring from the half-empty barge to the other barge, and then as part of that, that was just Kirby folk did that. And as a result, what the Kirby people did, they'd go around and they'd look for leaks. He also said, if there was a slippery product where Mr. Hilton fell, that that would have come from leaks on the barge, and that would not have been Intertech because the only people who had been working on that barge up to the point that my client was injured were Kirby people. And if you look at Sandia, you know, I know I'm beating it, but Sandia says, you know, for Sandia's protection to apply to protect the vessel owner, the longshore company has to have started work and have control over the work area, which Kirby, which Mr. Hilton's company did not. Tubalcain, we looked at that, and I agree that the case against Tubalcain is a premises liability case under Texas law. The Honorable Trial Court, in her refusal to remand the case, indicated that she would submit both the case against Tubalcain and the case against Kirby to a jury. So we're not faced with that. So frankly, I'm not going to pursue the fact that the court was improper in refusing to remand the case. Counsel for defendants were very good in giving me a nice brief on the difference between subject jurisdiction and remand jurisdiction, and I don't think I'm going to pursue that one. Are you going to waive your appeal of the denial of the motion to remand? I am, Your Honor. All right, thank you. It also makes my argument briefer. Well, thank you for that, too. Thank you. Tubalcain's negligence, it's a Texas premises liability case. Mr. Hilton, I pled, and I don't think it's been controverted, that he had the status of a business invitee. As a business invitee, Tubalcain had the duty to exercise reasonable care to provide a safe workplace, and that would include the lack of lighting on the pier. They make the interesting argument that, well, but that doesn't apply because Mr. Hilton was injured when he got on the barge. There's case law out of a judge in Houston, state judge in Houston, says, no, it goes a little further than that, and we think there's a jury issue presented on that as well. And really, what we believe, well, Kirby controlled the lighting, gangways, inspection, cleaning of the barge. Mr. Hilton had nothing to do with that, and he hadn't even begun work when he got on the barge and was injured. It was Tubalcain's dock. They provided some lighting. It wasn't adequate. Aren't you repeating your arguments? Yes, Your Honor, I realize that. I'm just making. OK, I have a question. Yes, ma'am. Your client had a bad knee or a bad foot or a bad leg. What was the situation there? He has a bad knee. With surgery, he can no longer climb. I mean, before the accident. He'd had an injury, but he was still able to do the work he was doing at the time of his accident. Was that the leg or the? When he stepped onto the barge, did he step on with his weak knee, weak leg? I don't remember if it was his weak knee, but he stepped on with his right leg, Your Honor. With his right leg? So was that the previously injured leg? I don't recall, Your Honor. It would be in his deposition, and I'd be glad to supplement that if the court would like that. OK. Thank you, Your Honor. All right, thank you. You saved time for a rebuttal, Mr. Barkley. Mr. Spiller. Thank you, Your Honor. May it please the court, John Spiller for Appalachee-Kirby Inland Marine, LP. Judge Clement, to answer your question, Mr. Hilton had been involved in a prior car accident in 2009. As a result of the accident, his right foot had to be surgically rebuilt. Mr. As shown in the record, Mr. Hilton testified that as a result of the surgically rebuilt right foot, he favored that right foot. It was that right foot that he claims went inward or twisted. Mr. Barkley said on a couple of occasions that he fell down. Actually, what happened is his right foot, when he planted it on the deck of the barge, he said it moved inward toward his left. And as a result, the nature of the injury that Mr. Hilton received was a plateau fracture of his right knee. So did he step onto the barge deck with the right foot? He stepped onto the deck first with his left foot, planted with his left foot, then brought his right foot onto the deck of the barge. He says that his right foot moved inward. He didn't testify that he fell or that he slipped and caught himself. It's that his right foot moved inward. So there was no testimony that he slipped at that point? Correct, Your Honor. The issue, because the remand issue has now been waived, I'd like to address the summary judgment in favor of Kirby and Lynn Marine. Under CINDIA and under the Longshore 905B Comp Act, a vessel owner such as Kirby owes three limited duties to stevedores such as Mr. Hilton. They are the turnover duty, the active control duty, and the duty to intervene. Mr. Hilton has not raised any issues as it relates to the dismissal of the duty to intervene. At the trial court level, he did not respond to the summary judgment seeking dismissal of the active control duty, which was noted by the court in its opinion. And that also would be off the table. So the remaining duty is the turnover duty. The standard for the vessel owner under the turnover duty is well settled in this circuit. Probably the best explanation recently has been this court's opinion in Kirksey versus Tonghai Maritime. And in that case, the turnover duty is the vessel owner has the obligation to use reasonable care to turn over the vessel in a condition that an experienced stevedore, such as Mr. Hilton, can conduct his operations in reasonable safety. Also with the turnover duty, there is a duty to warn of what are considered to be latent dangers. And latent dangers are either those that are hidden and are known by the vessel owner, or dangers that an experienced stevedore would not reasonably anticipate encountering. In this instance, what Mr. Hilton complains about, according to his appellate brief, are three things. The absence of a gangway, so-called insufficient lighting, and the condition of the deck of the barge. Mr. Hilton admitted he was out there to oversee the work of a trainee. He assessed the situation, the fact that the bow of the barge was firm up against the dock and about a foot or 18 inches separated it, and you could step down to the deck of the barge. We provided a copy of the picture of the bow of the barge. There's no railing or anything like that. It's just a flat, open surface that you can step straight onto. What was the distance between the deck where you had to step down? Mr. Hilton testified that in stepping from the dock onto the deck of the barge, that you're stepping down approximately one foot. Now, Mr. Hilton let the trainee board the barge first, and before the trainee boarded the barge, Mr. Hilton instructed him to be careful, watch your step. Mr. Hilton testified in his deposition, part of the summary judgment record, that he was subjectively aware that it was misty and that it was windy out and that the deck of the barge was slippery. He knew that. So what this Court has said in Kirksey is that if a condition is open and obvious, then the vessel owner has no duty to warn the stevedore of that condition. And what Kirksey goes further in saying is they don't have a duty even to guard against or remove the open and obvious condition. What do you do with the suggestion that there may have been some oil or other liquid on there along with any water from the atmosphere and that it otherwise would have been a non-slip surface, so one would not have expected it to be slippery? Your Honor, when Mr. Hilton gave his deposition and was asked what caused him to lose his balance or his foot to buckle inward, he said he had no idea. He didn't know. He didn't know what the composition of the surface covering was. Later, he submitted two different affidavits and he said that it may have been, emphasis on may, may have been transmission fluid or motor oil. Kirby submitted an affidavit of the captain of the tug that pushed Kirby Barge 27758, Captain Howell. He testified and we provided pictures that the open surface of the bow of the barge, there are only two fixtures, there are two winches, neither of which use oil. This court recently in a longshore case that was decided on August 2nd of 2016, a case called Kitchens versus Stolt Tanker, encountered a very similar situation. We had a terminal operator boarding a vessel during cargo transfer operations. That gentleman claims to have slipped on a foreign substance on the vessel itself and asserted a longshore claim against the owner of the vessel. In that case, the plaintiff, Mr. Kitchens, said that he believed that he slipped in either what was called vague oil, this cargo that was being transferred, or some sort of other untoward substance that shouldn't have been there on the deck. And what this court said is that that testimony didn't create a fact issue, that it rose, it was merely unsubstantiated assertions, improbable inference, and unsupported speculation, which cannot create a fact issue. Here, Mr. Hilton says it may have been transmission fluid, may have been motor oil, but at no time did he provide any kind of corroborating evidence to suggest that that is in fact what happened. He has no source of this transmission fluid, he has no source of this motor oil. As Judge Clement, you observed, there's no evidence that there was some sort of oil on his pants or on the surface of his shoes. In fact, what Mr. Hilton testified to is that after his accident occurred, he sat there near the front, the bow of the barge, and waited for his trainee to do the gauging and sampling, and at no time went and inspected the area where he supposedly slipped. There is no circumstantial evidence to support the assertions by Mr. Hilton, and the district court correctly did not use his change in testimony from his deposition where he said, I don't know what caused me to slip, to his later affidavits where he posits an alternate explanation, and the court, the district court, correctly pointed out that you can't change your testimony to create a fact issue. For all of those reasons, the district court correctly granted summary judgment to Kirby and Marine on the turnover duty as well as the other two duties, and unless the court has any questions, I'll cede my time to my fellow appellee. Yes, thank you, Mr. Spiller. Mr. Killeen? Good morning. Robert Killeen on behalf of Appellee Tugelkane. First, I'd like to put forward that appellant on page 30 of his brief makes the unfounded statement that we breached a duty. The problem with that is, first, there has to be established that we owed a legal duty to the appellant, and I would respectfully represent that. That's a question of law which was properly handled and disposed of by Judge Crone. The only duty Tugelkane had was to provide a reasonably safe dock. Contrary to what Mr. Barkley said to you, we did not owe a duty to provide a reasonably safe workplace, which was adjacent property. You just own the property, right? You just own the dock? Yes, Your Honor. We own the dock. We do not own the adjacent property, the Kirby Barge. Did you have the lighting? Were you responsible for the lighting? Your Honor, no. The short answer is no. I just want the real answer here. That is the real answer, and I'll get to that because it was mentioned by Mr. Barkley in an unpublished decision, the Fletcher decision out of Harris County. We do not owe a duty to illuminate the barge because, again, it's adjacent property, but there are four assumed duty exceptions, and I'll get to that. But it comes down to a simple question of what are our duties to adjacent property, and it's undisputed that Tugelkane did not possess or control the Kirby Barges, the adjacent property. That's undisputed, and the case that the district court cited was Allen Keller, where the court stated Tugelkane is only liable if it is the possessor or controller of the premise on which appellant was injured, and again, that's undisputed. We're just the dock. Addressing your specific inquiry, there are four assumed exceptions under Fletcher. None of them apply. The first, contract. We don't have a contract with Kirby. The second, dangerous condition. We have no duty to ascertain whether there is a dangerous condition on the adjacent property because, in fact, Fletcher is truly distinguishable from our case because in the Fletcher case, that was a case where the defendant built, maintained, and frequently used the adjacent property. So we don't have anything to do with the Kirby Barges. The third assumed exception is we assume control of their barges. We don't do that. And the final exception is an obscure danger exists. I would respectfully represent that misting for an experienced stevedore is not an obscure danger. And again, there was no evidence. And Judge Crone very articulately went through all four, demonstrated that there was no evidence to the exception, and since the accident did not occur on our property, our dock, because it's undisputed he fully boarded the Kirby Barge before this happened, we have no liability under Texas state law. Counsel, two things you just said that make me wonder just a bit on what the law is, not maybe the application here. You said he had fully boarded. If he had not, if one foot was on your property and the other, does that alter the analysis under Fletcher? Under this court, the answer is no. Florida Fuels, I think it's a 1993 Fifth Circuit decision. Dock owner is not responsible for safe ingress and egress aboard vessels. So the answer is no under the Florida Fuels decision from 1993. So unless there's some defect on your pier, wharf, whatever it is, broken boards, whatever else that caused him to sort of stumble towards the vessel, absent any kind of defect on your property, none of, no possible liability on an accident like this. That is the way I view Texas premise liability law. It's an oversimplification. There's got to be a dangerous, there's got to be, excuse me, a dangerous defect or dangerous activity. There's neither on our property. And the final thing I'd like to point out is, I also thought Judge Crone was very articulate in demonstrating that the lighting and the gangway, which are not our responsibility, are not really what's at issue here. Because what's at issue here is the appellant is claiming, on the Kirby barge, there was a substance which caused his right leg to move, so to speak. And I just want to be crystal clear that despite that, lighting and the gangway are not the dock owner's responsibility regarding the barge. So unless there are any further questions, I want to thank you for allowing me. Thank you, Mr. Killeen. Mr. Barkley, you've saved time for a bow. Thank you, Your Honor. Three issues, really. The lighting, the gangway, and the slippery substance on the barge. When I climb or come down a set of stairs, I expect there to be a handrail so that I can safely descend a set of stairs. If I'm trying to step from a dock onto a barge that's a foot below me, hopefully there's going to be a set of stairs or something that I could safely go down onto the dock. Well, would you agree with the argument we just heard, that if there is any obligation, it's Kirby's and not the dock owner's? Well, except that the dock owner provided the gangways. What happened would be that Kirby would order the gangways from Tubulcain. Tubulcain would then supply them. Additionally, if there was any gangway ordered and Tubulcain failed in its contractual obligation to abide? I have no evidence of that with respect to this particular barge, Your Honor. Well, the summary judgment's been ordered. He didn't ask for a delay for more discovery. So the record is what the record is. I understand that, Your Honor. But the record is that Kirby had responsibility to order the barges, knew that Mr. Hilton was, I'm sorry, Kirby ordered to order the gangways. Kirby knew that Mr. Hilton was coming. It was Kirby's barge. Todd Belkey testified that if there was a slippery material on the barge, that it could have come from leaks, and that would not have been caused by anything that Mr. Kirby's employer did. Todd Belkey gave a very good deposition. Significant portions are attached to the brief or referenced in the brief. And he's the one who said that if there was a slippery surface on the barge, that should not have been, it shouldn't have been there. Kirby should have found it, should have cleaned it up. But that's only one of three things. The other thing is, it would have been nice if Mr. Hilton had been able to see where he was stepping. And Todd Belkey said that while there were no lights on the barge, that there were lights on the Kirby tug, and that the captain of the Kirby tug could have turned those lights onto to shine onto the barge and given Mr. Hilton, you know, more light so he could see what he was doing. Oh, he would have to have known Mr. Hilton was coming to work at that point. But he said he did know that. If you read Todd Belkey's deposition, he testified that Kirby knew that Mr. Hilton was coming, that somebody was coming to gauge these barges. Did you say there was a gangway to the other barge? There was, Your Honor. So could you use the gangway to the other barge to get to the barge where your client was entered? How were they configured? They were a significant difference apart. When they came in, they were the same height, same height above the water because they reach about half the pool. So they were in tandem? Yes. They weren't, okay. And then what happened was Kirby came in and pumped the oil from one barge into the barge that Mr. Hilton was going to gauge and what that caused the two barges to separate vertically. And there was no gangway between the, that I, or between the two barges. That's sort of where we are. All right. Thank you, Mr. Barkley. Thank you all. The case is under submission and the